## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.: 1:19-cv-2642 |
| and | |
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | **COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTIES, AND OTHER EQUITABLE RELIEF** |
| Plaintiffs, | |
| vs. | |
| GOOGLE LLC, a Delaware limited liability company, | |
| and | |
| YOUTUBE, LLC, a Delaware limited liability company, | |
| Defendants. | |

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and The People of the State of New York ("State of New York"), by their attorney Letitia James, Attorney General of the State of New York (collectively, "Plaintiffs"), for their Complaint allege that:

1.     Plaintiffs bring this action under Sections 5(a)(1), 5(m)(1)(A), 13(b), and 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), and 56(a)(1), and Sections 1303(c), 1305(a)(1), and 1306(d) of the Children's Online Privacy Protection Act of 1998 ("COPPA"), 15 U.S.C. §§ 6502(c), 6504(a)(1), and 6505(d), to obtain monetary civil penalties and damages, restitution, or other compensation, a permanent injunction, and other equitable relief for Defendants' violations of the Children's Online Privacy Protection Rule ("Rule" or "COPPA Rule"), 16 C.F.R. Part 312, and Section 5 of the FTC Act.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter under 28 U.S.C.

§§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(m)(1)(A), 53(b), and 56(a), and 15

U.S.C. § 6504(a)(1).

3.      Venue is proper in the United States District Court for the District of Columbia

under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) – (d) and 1395(a).

## THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT RULE

4.      Congress enacted COPPA in 1998 to protect the safety and privacy of children

online by prohibiting the unauthorized or unnecessary collection of children's personal

information online by operators of Internet websites and online services.  COPPA directed the

Commission to promulgate a rule implementing COPPA.  The Commission promulgated the

COPPA Rule on November 3, 1999, under Section 1303(b) of COPPA, 15 U.S.C. § 6502(b), and

Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553.  The Rule went into effect on

April 21, 2000.  The Commission promulgated revisions to the Rule that went into effect on July

1, 2013.  Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of

the FTC Act, 15 U.S.C. § 57(a)(d)(3), a violation of the Rule constitutes an unfair or deceptive

act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C.

§ 45(a).

5.      The Rule applies to any operator of a commercial website or online service

directed to children under 13 years of age that collects, uses, and/or discloses personal

information from children, or on whose behalf such information is collected or maintained.

Personal information is "collected or maintained on behalf of an operator when . . . [t]he operator

benefits by allowing another person to collect personal information directly from users of such

Web site or online service." 16 C.F.R. § 312.2. The definition of "personal information" includes, among other things, "first and last name," "online contact information," and a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services," such as a "customer number held in a cookie . . . or unique device identifier." 16 C.F.R. § 312.2.

6.      The Rule can also apply to websites or online services that collect personal information from users of other child-directed websites or online services. Under the Rule, a website or online service is "deemed directed to children when it has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children." 16 C.F.R. § 312.2.

7.      Among other things, the Rule requires a covered operator to give notice to parents and obtain their verifiable consent before collecting children's personal information online. 16 C.F.R. §§ 312.4 and 312.5. This includes but is not limited to:

a.  Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth in the Rule;

b.  Providing clear, understandable, and complete notice of its information practices, including specific disclosures directly to parents; and

c.  Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children.

8.      The Rule prohibits the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.5(c)(7), 312.2. Behavioral advertising, which also is referred to as personalized, targeted, or interest-based advertising, involves the tracking of a consumer's online activities in order to deliver tailored advertising based on the consumer's inferred interests.

## PLAINTIFFS

9.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58.  The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such other equitable relief as may be appropriate in each case.  15 U.S.C. §§ 53(b), 56(a)(2)(A).  The FTC is also authorized to initiate federal district court proceedings, by its own attorneys, to recover civil penalties for violations of the COPPA Rule, if the Attorney General fails to initiate such litigation within 45 days after receipt of notice from the FTC of its intention to initiate such litigation. 15 U.S.C. §§ 56(a).  With respect to the instant proceeding, the Attorney General received such notice from the FTC and failed to initiate the proceeding within 45 days.

10.      Plaintiff the People of the State of New York is represented by and through its Attorney General Letitia James.

## DEFENDANTS

11.      Defendant Google LLC is a Delaware limited liability company with its principal place of business in Mountain View, California.  Google LLC transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Google LLC has advertised, marketed, and distributed its YouTube video sharing platform to consumers throughout the United States.  At all times

material to this Complaint, acting alone or in concert with Defendant YouTube, LLC, Google

LLC formulated, directed, controlled, had the authority to control, or participated in the acts and

practices set forth in this Complaint.

12.     Defendant YouTube, LLC is a Delaware limited liability company with its

principal place of business in San Bruno, California and is a wholly owned subsidiary of Google

LLC.  YouTube, LLC transacts or has transacted business in this district and throughout the

United States.  At all times material to this Complaint, acting alone or in concert with Defendant

Google LLC, YouTube, LLC has advertised, marketed, and distributed its YouTube video

sharing platform to consumers throughout the United States.  At all times material to this

Complaint, acting alone or in concert with Defendant Google LLC, YouTube, LLC formulated,

directed, controlled, had the authority to control, or participated in the acts and practices set forth

in this Complaint.

## COMMERCE

13.     At all times material to this Complaint, Defendants have maintained a substantial

course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

15 U.S.C. § 44.

## DEFINITIONS

14.     For purposes of this Complaint, the terms "child," "collects," "collection,"

"Commission," "disclosure," "Internet," "operator," "parent," "personal information," "obtaining

verifiable consent," "third party," and "website or online service directed to children," are

defined as those terms are defined in Section 312.2 of the Rule, 16 C.F.R. § 312.2.

## OVERVIEW

15.     As described below, commercial entities operating child-directed "channels" on Defendants' YouTube platform are "operators" under the COPPA Rule, as they permit Defendants to collect personal information, such as persistent identifiers for use in behavioral advertising, on behalf of those commercial entities.  In numerous instances, Defendants have actual knowledge they are collecting personal information directly from users of these child-directed channels.  Through this actual knowledge, Defendants are deemed to be operators of a website or online service directed to children.  At no time have Defendants attempted to provide parents with the COPPA-specified notice of their information practices or obtain verifiable parental consent.

## DEFENDANTS' BUSINESS PRACTICES

16.     Defendants provide a video-sharing platform on the Internet at www.youtube.com and on mobile applications (collectively, "YouTube") on which, among other things, consumers can view videos or upload video content to share.

17.     In general, Defendants do not require users to register or create an account in order to view videos on YouTube.  As a result, anyone can view most content on YouTube regardless of age.  Defendants do limit certain activities on the platform, such as commenting on videos, to users that are logged in to a Google account.  Comments can display the user's name and are publicly available for others to view.

18.     In order to create a Google account, Defendants require the user to provide first and last name, e-mail address, and date of birth.  A user can create an account by linking to an account "set up" page from any video or channel on YouTube, including videos and channels that are directed to children.  Defendants prevent users who identify as under 13 from creating an

account.  Users are not automatically logged off when they exit YouTube; as a result, many users are logged in for extended periods of time.

19.     In order to upload content on YouTube, users must have a Google account and then can create a "channel" to display their content.  These users ("channel owners") can set "key words" for their channel that help other users searching for videos on YouTube find their channel.  Channel owners can also set key words for individual videos they upload and choose whether to enable comments.

20.     Eligible channel owners, which include commercial entities, can "monetize" their channel by allowing Defendants to serve advertisements to viewers, for which the channel owners and the Defendants earn revenue.  Defendants enable behavioral advertising by default on monetized channels.  When a channel owner monetizes a channel, Defendants collect information associated with a viewer's cookie or mobile advertising identifier in order to track the viewer's online activities and serve advertising that is specifically tailored to the viewer's inferred interests.

21.     Beginning in January 2016, Defendants offered channel owners the option to disable behavioral advertising on their monetized channels.  To turn off behavioral ads, the channel owners are required to actively check a box in the "Advertisements" section of YouTube's "Advanced Video Manager Options" menu.  The checkbox that allows the channel owner to opt out of behavioral advertising contains text stating that doing so "may significantly reduce [the] channel's revenue."  When a channel owner opts out of behavioral advertisements on a monetized channel, Defendants serve contextual advertising on the channel, which generates less revenue for the channel owner and Defendants.

22.     Defendants provide additional options for channel owners to earn revenue through remarketing to viewers of their channels when they visit other websites and online services.  For example, a toy company with a YouTube channel can set its account so that it serves advertisements for its toys to viewers of its channel when they visit other websites.  Defendants also earn revenue when channel owners remarket to viewers of their channels.

*YouTube and Kids*

23.     Defendants market YouTube to popular brands of children's products and services as a top destination for kids.  For example, in a presentation to toy brand Mattel, maker of Barbie and Monster High, entitled "Insights on Families Online," Defendants stated, "YouTube is today's leader in reaching children age 6-11 against top TV channels."  *See* Exhibit A (Google Presentation to Mattel, Insights on Families Online (partial)).  In a presentation provided to toy brand, Hasbro, maker of My Little Pony and Play-Doh, Defendants claimed that "YouTube was unanimously voted as the favorite website for kids 2-12," and that "93% of tweens visit YouTube to watch videos."  *See* Exhibit B (Google Presentation to Hasbro, Stat Pack: Additional insight into mobile usage among parents + children (partial)).  In another presentation to Hasbro, Defendants referred to YouTube as "[t]he new 'Saturday Morning Cartoons.'"  *See* Exhibit C (Google Presentation to Hasbro, 2016 Kids + Family Digital Trends (partial)).  That presentation also claimed that YouTube was the "#1 website regularly visited by kids" and "the #1 source where children discover new toys + games."  *Id*.

24.     Despite marketing YouTube as the "favorite website for kids 2-12," Defendants asserted on other occasions in email exchanges that channels on the platform did not need to comply with COPPA.  For example, in response to one advertising company's questions regarding advertising on YouTube as it relates to a toy company and COPPA, Defendant

Google's employee responded, "we don't have users that are below 13 on YouTube and platform/site is general audience, so there is no channel/content that is child-directed and no COPPA compliance is needed."

25.     In addition to marketing YouTube as a top destination for kids, Defendants have a content rating system that categorizes content into age groups and includes categories for children under 13 years old.  In order to align with content policies for advertising, Defendants rate all videos uploaded to YouTube, as well as the channels as a whole.  Defendants assign each channel and video a rating of Y (generally intended for ages 0-7); G (intended for any age); PG (generally intended for ages 10+); Teen (generally intended for ages 13+); MA (generally intended for ages 16+); and X (generally intended for ages 18+).  Defendants assign these ratings through both automated and manual review.  Previously, Defendants also used a classification for certain videos shown on YouTube as "Made for Kids."

26.     Defendants do not treat Y rated channels or videos differently for purposes of data collection from other content on YouTube.  Defendants continue to allow the channel owner to monetize Y rated content and earn revenue from behavioral advertising.  Defendants also had no policy in place to treat content classified as "Made for Kids" differently for purposes of behavioral advertising on YouTube.

27.     In 2015, Defendants created a separate mobile application called "YouTube Kids," aimed at children age 2-12, generally using content rated Y or G taken from YouTube on an automated basis.  Defendants also specifically curate, through manual review, content that appears on the YouTube Kids home screen, which Defendants refer to as the "home canvas." Content that appears on YouTube Kids continues to be available on YouTube.  Unlike Defendants' practices on YouTube, Defendants do not collect persistent identifiers from users of

9

YouTube Kids in order to serve behavioral advertising.  Instead, Defendants monetize YouTube

Kids solely through delivery of contextual advertising.

*YouTube Hosts Numerous Child-Directed Channels*

28.     YouTube hosts numerous channels that are "directed to children" under the

COPPA Rule.  Pursuant to Section 312.2 of the COPPA Rule, the determination of whether a

website or online service is directed to children depends on factors such as the subject matter,

visual content, language, and use of animated characters or child-oriented activities and

incentives.  An assessment of these factors demonstrates that numerous channels on YouTube

have content directed to children under the age of 13, including those described below in

Paragraphs 29-40.  Many of these channels self-identify as being for children as they specifically

state, for example in the "About" section of their YouTube channel webpage or in

communications with Defendants, that they are intended for children.  In addition, many of the

channels include other indicia of child-directed content, such as the use of animated characters

and/or depictions of children playing with toys and engaging in other child-oriented activities.

Moreover, Defendants' automated system selected content from each of the channels described

in Paragraphs 29-40 to appear in YouTube Kids, and in many cases, Defendants manually

curated content from these channels to feature on the YouTube Kids home canvas.

29.     Toy brand Mattel has several popular YouTube channels, including Barbie,

Monster High, Hot Wheels, and Thomas & Friends.  Content from each of these channels

regularly appears on YouTube Kids and has been featured on its home canvas.  These channels

each show videos related to popular children's toys.  For example, the Barbie YouTube channel

has animated videos with Barbie and her friends, including, for example, "Meet the Junior

Rainbow Princesses."  The channel also includes episodes of "Barbie Dreamtopia," a show the

channel owner describes as "targeting 3-6 year olds."  The key words the channel owner set that

help viewers find the Barbie channel on YouTube include "Barbie doll" and "Malibu

Dreamhouse."  According to Mattel, the target demographic for Monster High is girls ages 6-10.

Defendants gave the Thomas & Friends channel a rating of Y.

      30.     Cartoon Network is a popular YouTube channel that shows animated kids

television shows, including Steven Universe, the Powerpuff Girls, and Teen Titans Go.  The

channel's content regularly appears on YouTube Kids and has been featured on its home canvas.

Defendants selected a clip from the Cartoon Network YouTube channel in a "Creating for Kids

Playbook," as a resource for other channels looking to make family-friendly content.  In one

marketing presentation, Defendants referred to the channel as a "popular YouTube Channel[]

kids are watching."

      31.     Hasbro's popular YouTube channel shows episodes of many animated kids

programs, including My Little Pony, Littlest Pet Shop, Hanazuki, and Play-doh Town.  The

channel's content regularly appears on YouTube Kids and has been featured on its home canvas.

According to the channel owner, the target demographic for My Little Pony is children ages 5-8

and the Hanazuki show is aimed at children ages 8-10.

      32.     Dreamworks TV is a popular YouTube channel that shows several animated

children's shows, including Dragons: Race to the Edge, Trollhunters, and Shrek.  The channel's

content regularly appears on YouTube Kids and has been featured on its home canvas.  The

"About" section of its YouTube channel webpage describes the channel as "made just for kids!"

The channel owner uses key words for its channel that include "kung fu panda," "how to train

your dragon," and "YouTube Kids."  In addition, at least one video appearing on this channel

was one of the most popular videos on YouTube Kids during a 90-day period in 2016.

33.     YouTube channel Masha and the Bear shows animated videos about a girl named Masha and her friend, a bear.  The channel's content regularly appears on YouTube Kids and is featured on its home canvas.  The popular YouTube channel's "About" section on its YouTube channel webpage says the channel is "entertaining and educating both [for] children and parents."  In a presentation provided to Defendants, the show's creator describes the target audience for Masha and the Bear as children ages 3-9.  Defendants gave the channel a rating of Y, both through their automated and manual review.  The channel uses key words that include "kids cartoons."  In addition, at least one video appearing on this channel was one of the most popular videos on YouTube Kids for a 90-day period in 2016.

34.     YouTube channel Bratayley is a popular channel featuring children engaging in a variety of scenarios with their parents.  The channel's content regularly appears on YouTube Kids and is featured on its home canvas.  The "About" section of its YouTube channel webpage states: "Family friendly content EVERYDAY?  Yep.  That's right.  Watch these crazy kids as they make everyday an adventure."  Episodes of the show include "Epic Pillow Fight" and "Annie's Hair is Purple?!"  In one email, Defendants' employee lists Bratayley as targeting children ages 8-10, based on Defendants' Age Classifier tool.  In addition, at least one video appearing on this channel was one of the most popular videos on YouTube Kids during a 90-day period in 2016.

35.     YouTube channel CookieSwirlC is a popular children's unboxing channel, which includes videos with titles such as, "Giant Rainbow Castle! Barbie Princess + Fairy Tea Party – Toy Video."  Unboxing videos feature products, often toys, being removed from boxes and a demonstration of how the products work.  The channel's content regularly appears on YouTube Kids and has been featured on its home canvas.  In the "About" section on its YouTube channel

12

webpage, CookieSwirlC describes itself as a "unique toy channel bursting with  . . . family friendly videos inspired by sugary cute toys . . ."  Although Defendants rated the CookieSwirlC channel as G, Defendants also rated several of the videos appearing on the channel as Y, meaning those videos were generally intended for viewers age 0-7.  In addition, at least one video appearing on this channel was one of the most popular videos on YouTube Kids during a 90-day period in 2016.

36.  YouTube channel Sandaroo Kids is a popular channel showing "family friendly parodies and skits for kids."  The channel's content regularly appears on YouTube Kids.  The "About" section on its YouTube channel webpage says, "We love dressing in Disney Princess Costumes, playing pranks and teaching kids how to learn colors."  The channel includes videos with titles such as "Barbie & Ken Dolls Fashion Show Party With Doll Ambulance."  In addition, at least one video appearing on this channel was one of the most popular videos on YouTube Kids during a 90-day period in 2016.

37.  YouTube channel EvanTubeHD is a popular channel in which Evan, currently 13 years old, reviews toys and video games.  Evan's first YouTube video was posted in 2011, when he was just 5 years old.  The channel's content regularly appears on YouTube Kids and has been featured on its home canvas.  The channel says in the "About" section on its YouTube channel webpage that it is for those viewers "looking for fun family-friendly YouTube content," and that the channel "is all about KID FUN."  In addition, at least one video appearing on this channel was one of the most popular videos on YouTube Kids during a 90-day period in 2016.

38.  YouTube channel Little Baby Bum is a popular channel, showing videos of well-known nursery rhymes.  The channel's content regularly appears on YouTube Kids and has been featured on its home canvas.  Video titles on the channel include, "Bath Song" and "New Baby

Brother & Sister."  The "About" section on its YouTube channel webpage describes it as "[t]he best nursery rhyme videos for children on YouTube."  Defendants gave the channel a rating of Y.  In addition, at least one video appearing on this channel was one of the most popular videos on YouTube Kids during a 90-day period in 2016.

39.     YouTube channel Mother Goose Club is a popular channel showing videos of well-known nursery rhymes.  The channel's content regularly appears on YouTube Kids and is featured on its home canvas.  Video titles on the channel include "The Wheels on the Bus Go Round and Round" and "Hickory Dickory Dock Rocks."  The "About" section on its YouTube channel webpage says the channel has "[t]he best nursery rhyme videos for children on YouTube[.]"  Defendants gave the channel a rating of Y.  In addition, at least one video appearing on this channel was one of the most popular videos on YouTube Kids during a 90-day period in 2016.

40.     YouTube channel Toyscouter is a popular channel with nursery rhyme videos, such as "Head, Shoulders, Knees and Toes Nursery Rhyme with Rapunzel!", and unboxing videos, such as "Giant Disney Jr Surprise Eggs."  The channel's content regularly appears on YouTube Kids.  The "About" section of its YouTube channel webpage says the channel is "striv[ing] to entertain kids."

41.     Defendants earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.

*Defendants Operate an Online Service Directed to Children*

42.     A website or online service is deemed directed to children where it has actual knowledge it is collecting personal information directly from users of another website or online

service directed to children. 16 C.F.R. § 312.2.  In numerous instances, as described in

Paragraphs 16-40, Defendants have actual knowledge that they collect personal information,

including persistent identifiers for use in behavioral advertising, from viewers of channels and

content directed to children under 13 years of age.  Defendants gained actual knowledge through,

among other things, direct communications with channels owners, their work curating specific

content for the YouTube Kids App, and their content ratings.

43.     In promoting YouTube Kids, Defendants work and communicate with numerous

owners of child-directed channels.  Defendants direct their employees to review and determine

which content on YouTube is appropriate to feature on YouTube Kids' home canvas.  In

numerous instances, through these communications and the manual curation process, Defendants

obtain actual knowledge of the child-directed nature of YouTube channels, including those

described in Paragraphs 29-40.

44.     In numerous instances, Defendants have knowledge of the age of the channel's

target audience, either through communications with the channel owners or through its own

research.  In the case of the Barbie, Monster High, Hasbro, and Masha and the Bear channels,

described in Paragraphs 29, 31, and 33, the channel owners specifically informed Defendants

that content appearing on their channels is directed to children under 13 years old.  In other

instances, Defendants determined that content on certain channels is child-directed.  For

example, in one email Defendants noted that their Age Classifier tool had determined Bratayley,

EvanTube, and Cartoon Network appealed to children under 13 years old.

45.     Defendants created numerous presentations to kids' brands, including toy

companies, in which Defendants highlighted various channels as popular with kids.  For

example, a 2016 presentation listed multiple channels under the heading "Popular YouTube

Channels Kids Are Watching," and included Cartoon Network, Bratayley, DisneyCarToys (now Sandaroo Kids), EvanTube, Little Baby Bum, CookieSwirlC, and Mother Goose Club.  Another presentation stated that "9 of top channels globally are kids," and included ToyScouter, Little Baby Bum, and Masha and the Bear, while another specifically mentioned Barbie, DreamworksTV, and Mother Goose Club as "kids case studies."

46.     As described in Paragraph 25, Defendants use both automated and manual means to review channels and videos on YouTube and assign them specific content ratings.  Defendants assigned some channels and content on YouTube a Y rating, which means the channel or video is generally intended for children ages 0-7.

47.     At no time did Defendants attempt to obtain verifiable parental consent from parents of viewers of these child-directed channels prior to the collection of personal information or provide parents with the COPPA-specified notice of their information practices.

## **VIOLATIONS OF THE CHILDREN'S ONLINE PRIVACY PROTECTION RULE**

### **Count I**

48.     Defendants are "operators" as defined by the Rule, 16 C.F.R. 312.2.

49.     Defendants collect personal information from children under the age of 13 through YouTube channels that are websites or online services directed to children.  Defendants have actual knowledge, as described in Paragraphs 16-47, that they collect personal information directly from users of these child-directed websites or online services.  Therefore, under the COPPA Rule, Defendants are deemed to be operators of a child directed website or online service.

50.     In numerous instances, in connection with the acts and practices described above, Defendants collected, used, and/or disclosed personal information from children in violation of the Rule, including by:

     a.  Failing to provide sufficient notice on their website or online service of the information they collect, or is collected on their behalf, online from children, how they use such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of the Rule, 16 C.F.R. § 312.4(d);

     b.  Failing to provide direct notice to parents of the information Defendants collect, or information collected on Defendants' behalf, online from children, how they use such information, their disclosure practices, and all other required content, in violation of Sections 312.4(b) and (c) of the Rule, 16 C.F.R. § 312.4(b)-(c); and

     c.  Failing to obtain verifiable parental consent before any collection or use of personal information from children, in violation of Section 312.5 of the Rule, 16 C.F.R. § 312.5.

51.     Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### THIS COURT'S POWER TO GRANT RELIEF

52.     Defendants violated the COPPA Rule as described above with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

53.     Each collection, use, or disclosure of a child's personal information in which Defendants violated the Rule in one or more ways described above constitutes a separate violation for which Plaintiff the Federal Trade Commission seeks monetary civil penalties.

54.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. §2461, amended by the Federal Civil Penalties Inflation Adjustment Improvements Act of 2015, Public Law 114-74, sec. 701, 129 Stat. 599 (2015), and Section 1.98(d) of the FTC's Rules of Practice, 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of not more than $42,530 for each such violation of the Rule assessed after February 14, 2019.

55.     Each collection, use, or disclosure of a child's personal information in which Defendants violated the Rule in one or more ways described above constitutes a separate violation for which Plaintiff State of New York seeks damages, restitution, or other compensation.

56.     Section 1305(a)(1) of COPPA, 15 U.S.C. § 6504(a)(1), authorizes Plaintiff State of New York to bring a civil action on behalf of the residents of New York for violations of the COPPA Rule, 16 C.F.R. Part 312, to enjoin the violations, enforce compliance with the Rule, obtain damages, restitution, or other compensation, or obtain such other relief as the Court may deem appropriate.

57.     Section 13(b) of the FTC Act, U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff the Federal Trade Commission, pursuant to Sections 5(a)(1), 5(m)(1)(A), 13(b), and 16(a) of the FTC Act, 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), and 56(a), and Plaintiff State of New York, pursuant to 15 U.S.C. § 6504(a)(1), and as authorized by the Court's own equitable powers, request that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act and the COPPA Rule by Defendants;

B.     Award Plaintiff the Federal Trade Commission monetary civil penalties from Defendants for each violation of the COPPA Rule alleged in this Complaint and award Plaintiff State of New York damage, restitution, or other compensation; and

C.     Award other and additional relief the Court may determine to be just and proper.

Dated:

Respectfully Submitted,

| | |
|---|---|
| LETITIA JAMES<br>Attorney General of the State of New York | ALDEN F. ABBOTT<br>General Counsel |
| *   /s/ Clark P. Russell*       | *   /s/ Kristin Krause Cohen*       |
| CLARK P. RUSSELL | KRISTIN KRAUSE COHEN |
| New York Bar No. 2848323 | D.C. Bar No. 485946 |
| Deputy Bureau Chief | PEDER MAGEE |
| JORDAN S. ADLER | D.C. Bar No. 444750 |
| New York Bar No. 4605556 | TIFFANY GEORGE |
| Assistant Attorney General | New York Bar No. 4023248 |
| Bureau of Internet and Technology | Federal Trade Commission |
| Office of the New York State Attorney General | 600 Pennsylvania Ave., NW |
| 28 Liberty St. | Mailstop CC-8232 |
| New York, New York 10005 | Washington, DC 20580 |
| (212) 416-8433 (voice) | (202) 326-2276 (voice) |
| (212) 416-8369 (fax) | (202) 326-3062 (fax) |
| Email: clark.russell@ag.ny.gov | Email: kcohen@ftc.gov |
| Email: jordan.adler@ag.ny.gov | Email: pmagee@ftc.gov |
| | Email: tgeorge@ftc.gov |
| | |
| *Attorneys for Plaintiff State of New York* | *Attorneys for Plaintiff Federal Trade Commission* |